CHARLES H. BLACK, SR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 103558, 105830. Promulgated September 26, 1941.

*Sidney J. Hayles, C. P. A.,* for the petitioner.
*J. Y. Porter, Esq.,* for the respondent.

206

**OPINION.**

BLACK: Two questions are presented for decision by the issues raised in the pleadings: (1) Whether the loss sustained by petitioner upon the foreclosure of the first mortgage and sale of the Franklin Building in 1936 was an ordinary business loss deductible in full, or whether it was a capital loss and limited in the amount deductible as determined by the respondent; (2) whether amounts expended in 1937 and 1938 in connection with the second and third mortgages on the Franklin Building, which were assumed by petitioner, were losses deductible in those years.

In his deficiency notices the respondent held that the amounts in question were not proper deductions. In his brief the respondent seems to defend his disallowance of these 1937 and 1938 deductions upon the ground that they were parts of the same loss which occurred in 1936 and that, inasmuch as the 1936 loss was a capital loss, the entire loss, including that which was incurred in 1937 and 1938, is limited by section 117 (d).

The applicable sections of the Revenue Act of 1936 are set out in the margin.[1] The provisions of the 1938 Act are the same as the 1936 Act in these respects.

The petitioner contends that the Franklin Building was purchased and held for sale at a profit in the ordinary course of his business as a trader or dealer in real estate and the loss sustained by the foreclosure of the first mortgage and sale of the property is deductible under section 23 of the Revenue Act of 1936. He further contends that the payments made by him in 1937 and 1938 in satisfaction of the second and third mortgages on the property, which he had assumed, constitute losses deductible in the years in which they were paid.

### The First Issue.

As has already been stated, in his income tax return for 1936, petitioner claimed a loss on the foreclosure of the first mortgage on the Franklin Building in the sum of $35,351.86. The amount of his loss is not in dispute. In the computation of the deficiency for 1936, the respondent treated the loss in question as a capital loss and allowed a deduction of $1,000 as the amount of capital loss allowable to petitioner on his one-half interest in the property. It is settled that a mortgage foreclosure and sale results in a "sale or exchange" within the provisions of section 117 of the taxing statute, *Helvering* v. *Hammel*, 311 U. S. 504.

The issue turns on whether the Franklin Building was acquired and held for sale to customers in the ordinary course of petitioner's

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

\* \* \* \* \* \* \*

(e) Losses by Individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; \* \* \*

SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(b) Definition of Capital Assets.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

\* \* \* \* \* \* \*

(d) Limitation on Capital Losses.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges.
\* \* \*

business, or whether it was acquired and held as an investment. The facts in the record, we think, support petitioner's contention that it was acquired and held for sale in the ordinary course of his business to customers, and we have so found as a fact from the evidence presented.

The facts show that petitioner was engaged in the business of buying and selling real estate for profit and had been engaged in this business in Atlanta for many years. His transactions included the buying and selling of buildings, and the buying, subdividing, and developing of large tracts of land for sale. Sometime prior to 1924 petitioner and his brother-in-law, Gould, bought about 3,000 acres of land in Webster County, Georgia, for the purpose of planting it in pecan trees and subdividing it into small tracts to be sold to customers for small pecan orchards. After planting about 100 acres in pecan trees it became evident that it was going to be a long and doubtful process. Petitioner and Gould wanted to get their money out of the property, but there was not a ready sale for farm land and it was decided to trade it for other property which could be more readily sold.

In 1924 petitioner traded the pecan farm as part consideration for the Franklin Building in Atlanta. The Franklin Building was leased to an automobile agency at approximately $7,000 per year and seemed to offer a likely prospect for petitioner and Gould to get their money out of the pecan farm venture. They thought that a building of that kind well leased would be readily salable, but before it could be sold the lessee became insolvent and the lease was canceled, leaving the building vacant and more difficult to sell at a favorable price. Thereafter, petitioner was compelled to pay out large sums of money to hold it. Finally, in 1936, he could no longer make the payments and the building was sold at a foreclosure sale, occasioning the loss here in question.

The respondent does not rest his argument solely on the fact that the Franklin Building was held by petitioner for twelve years before it was sold at foreclosure sale. He concedes that petitioner was engaged in the real estate business and that the property here involved constituted "property held by the taxpayer" during a part of the calendar year 1936. He argues, however, that the property in question was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. The respondent apparently would limit petitioner's customers to customers for residential property because he dealt principally in that type of property. That construction it seems to us is too narrow. It is obvious from the record that the Franklin Building was acquired by petitioner and Gould for the purpose of selling it and was continuously held for sale from the time it was purchased until it was lost on foreclosure sale.

Where, as here, one is regularly engaged in the business of buying and selling real estate, as was petitioner, any person who can be found to buy such property is a customer, as that term is ordinarily understood, and where such property is held for sale under such circumstances it must be deemed to be held for sale to customers within the meaning of the statute. *Julius Goodman*, 40 B. T. A. 22.

The case here is readily distinguished on its facts from *Thompson Lumber Co.*, 43 B. T. A. 726, cited and relied upon by the respondent. In the *Thompson* case, the taxpayer was not engaged in the business of buying and selling real estate for profit, and that fact we strongly emphasized in our opinion, but it acquired real estate in payment of accounts receivable for lumber and other materials which it furnished. The corporation's holding of the real estate was merely incidental to its business. In the instant case the property in question was held by the petitioner primarily for sale to customers in the ordinary course of his trade or business, as shown by the evidence upon which our findings of fact are based. See *Neils Schultz*, 44 B. T. A. 146; *A. R. Calvelli*, 43 B. T. A. 6. It follows that the loss sustained was an ordinary loss, all of which is deductible from income in the taxable year, and is not a capital loss limited by section 117 of the statute.

### The Second Issue.

After the loss of the Franklin Building through foreclosure sale in 1936, petitioner remained liable on the second and third mortgage obligations which he had assumed. In 1937 and 1938 he paid out in connection with these liabilities the respective sums of $7,115.57 and $15,992.44, which amounts he claims as a loss sustained on the Franklin Building and deductible from income in the years in which they were paid. Of the amount of $7,115.57 claimed as a deduction for the year 1937, the respondent allowed the sum of $3,325 as a bad debt in connection with the Franklin Building transaction and $507.33 as insurance paid out. There is, however, some confusion in the record about the treatment of the interest claimed in the amount of $155. In the "Explanation of Adjustments" attached to the deficiency letter, the respondent said:

(c) To disallow one-half of interest payment of $310.00 in connection with Black-Gould Building. Since the entire amount was claimed as interest on the original return, the payment made by you for Mr. Gould's part has been disallowed for the reason that it was not claimed as a bad debt.

This indicates that the $155 claimed as representing petitioner's one-half of the interest was allowed. It also indicates that the $155 representing the amount petitioner paid on Gould's obligation was disallowed and not included in the $3,325 allowed as a bad debt.

However, petitioner testified that the $155 allowed was the amount paid for Gould and that the $155 representing his one-half of the interest paid was disallowed. Since both parties seem to accept petitioner's understanding, and there is no reference to the matter in briefs, this is an item which can be properly adjusted under Rule 50.

In a recomputation under Rule 50 it should be noted that $3,832.33 of the $7,115.57 deduction claimed by petitioner for the year 1937 has already been allowed by respondent.

The respondent relies on the Board's decision in *Harry H. Diamond*, 43 B. T. A. 809, in support of his disallowance of 1937 and 1938 claimed losses, but we do not think that decision supports his contention here. In the *Diamond* case there was no contention that the property in question was held for sale to customers in the ordinary course of the taxpayer's business. Admittedly, it was a capital asset and the Board found that the payment made after the foreclosure sale was merely a payment on the purchase price of the property which the taxpayer had obligated himself to make and was a part of the cost to petitioner of the mortgaged property and a part of the total loss sustained by him as a direct result of the foreclosure sale. We think this reasoning is sound, but it is not applicable in the case here under consideration. We have found that the Franklin Building was held by petitioner primarily for sale to his customers in the regular course of his business, and on these facts have held that the capital loss provisions contained in section 117 (d) are not applicable.

It naturally follows that the losses occasioned by the payments in 1937 and 1938 must be regarded as of the same character as the loss occasioned by the foreclosure sale in 1936, i. e., ordinary losses and not capital losses. They would therefore be deductible as ordinary losses in the years when paid.

The general rule as set out in sections 41 of the Revenue Acts of 1936 and 1938 is that the net income shall be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of such taxpayer. Sections 43 of the applicable revenue acts provide that:

The deductions and credits * * * shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *

The petitioner kept his books and made his income tax returns on the cash receipts and disbursements method. The mere existence of liability of one on the cash basis is not enough to establish loss

and there can be no deduction until the debt is paid. *Page* v. *Rhode Island Hospital Trust Co.*, 88 Fed. (2d) 192; cf. *Helvering* v. *Price*, 309 U. S. 409, *Burnet* v. *Huff*, 288 U. S. 156; *Eckert* v. *Burnet*, 283 U. S. 140; *Jenkins* v. *Bitgood*, 101 Fed. (2d) 17.

We think the above authorities establish that in the instant case petitioner sustained losses in 1937 and 1938 due to payments on the second and third mortgages. These losses were occasioned by the foreclosure sale of property held for sale in the ordinary course of petitioner's business and are of the same character as the loss sustained at the time of the sale. *Harry H. Diamond*, *supra*. They were, therefore, ordinary losses, realized and deductible in the years when paid. Cf. *Tams* v. *United States*, 33 Fed. Supp. 764.

*Decision will be entered under Rule 50.*