Dan D. Jones v. Commissioner. Phyllis I. Jones v. Commissioner.
Jones v. Commissioner
Docket Nos. 22123, 22124, 25609, 25610.
United States Tax Court
1951 Tax Ct. Memo LEXIS 129; 10 T.C.M. (CCH) 781; T.C.M. (RIA) 51246; August 23, 1951
Charles J. Munz, Jr., Esq., Sydney R. Reed, Esq., and C. Earle Memory, C.P.A., 416 W. 8th St., Los Angeles, Calif., for the petitioners. H. A. Melville, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge. Respondent determined deficiencies and penalties against petitioners as follows: Petitioner
Docket No.
Tax
Year
Deficiency
Negligence
Delinquent
Dan D. Jones
22123
Income and
Victory
* 1943
$ 8,970.74
$ 448.54
Income
1944
9,130.84
1,826.17
$456.54
25609
Income
** 1945
15,052.97
Income
1946
30,237.92
Phyllis I. Jones
22124
Income
1944
423.55
21.18
84.71
25610
Income
1945
1,073.17
Income
1946
405.84
*130 Several issues have been settled by agreement. The remaining questions are: 1. Did respondent err in determining that gain realized on sale of certain realty was ordinary income? 2. Did respondent err in determining negligence penalties for 1943 and 1944? 3. Did respondent err in determining delinquency penalties for 1944? Some of the facts are stipulated. Findings of Fact The stipulated facts are found. Petitioner Dan D. Jones, hereinafter called petitioner, is an individual with his place of business in Los Angeles, California. During the years 1942 and 1943 he was a single person; on January 13, 1944, he married petitioner Phyllis I. Jones. Throughout the years 1942 to 1947, inclusive, petitioner was a resident of California; since his marriage he and Phyllis have resided there as husband and wife. Petitioner, for the years 1942 and 1943, and he and Phyllis thereafter, reported income on the calendar year and cash basis by separate returns filed with the collector of internal revenue for the sixth district of California. Phyllis had no separate income during any of the years 1944 to 1947, inclusive, and reported for these years only community income. During the *131 years in issue and for many years prior thereto, petitioner was engaged in a real estate brokerage business operated under the name of Dan D. Jones Company. Since the early thirties he has also been engaged in buying and selling real property on his own account. From 1942 to 1947, inclusive, petitioner bought and sold twenty-eight pieces of property, twenty of which were his separate transactions and eight involved joint ventures. Three additional pieces of property were acquired in 1945 and one additional parcel in 1946; the four were sold in 1948. During the period 1942-1947, inclusive, petitioner acquired thirteen pieces of property which were not sold, of which two are listed as petitioner's personal residence. Petitioner reported the sales of the twenty-eight properties in the years in issue as long-term capital transactions. Respondent determined that the property was held primarily for sale to customers in the ordinary course of petitioner's trade or business. His determination with respect to fifteen of the properties sold has been conceded. Those remaining in issue are representative in character of those conceded to have been held for sale to customers in the ordinary course *132 of business. The contested transactions are listed as follows: Net *
Rentals
Date
Date
Selling
Designation
Type
(or Loss)
Acquired
Sold
Price
1. 5134 De Longpre
Apartment
$ 132.41
9/19/41
8/12/42
$39,453.51
2. 504 Hobart
Apartment
83.67
8/23/43
10/ 2/4
23,516.31
3. Longwood
Unimproved
7/12/43
9/ 5/44
6,271.30
4. 342 Orange
Apartment
120.81
7/ 2/43
4/22/44
15,406.20
5. Hollywood Gramercy
Unimproved
(189.57)
8/ 8/41
4/26/45
19,877.35
6. Western Ave.
Unimproved
145.15
9/ 1/43
1/30/45
11,167.85
7. 2400 Inverness
Residence
1/ 5/44
4/ 2/45
30,297.41
8. 11424 Santa Monica
Business-Rental
740.88
4/ 4/44
7/20/45
48,193.77
9. Palm Springs
Residence and
Guest House
(21.61)
1/ 5/44
6/19//45
51,612.33
10. Rossmore and Arden
Unimproved
(36.12)
4/26/45
2/20/46
14,620.32
11. 240 Hill
Business-Garage
(237.87)
12/12/44
1/ 7/46
141,394.25
12. 7017 Melrose
Store Building
1,881.65
8/22/44
7/19/46
14,160.75
13. 2018 Vista DelMar
Apartment-Court
(919.12)
9/ 8/40
8/20/46
25,610.45
*133 Throughout the period of purchase and sale of these properties petitioner kept his name before the public through the medium of telephone directory or newspaper advertising or both. Beginning with the telephone directory issued in January 1943 and continuing to and including the directory issued in September 1946 petitioner carried a one-column wide and one-quarter page long advertisement in the Beverly Hills directory which read: "Exchange Specialists, Dan Jones Company. Estatablished 1922. Income, business, residential. We also buy for cash. Let's talk it over. We can serve you. Fltzroy 4107 or 4108. 3968 Wilshire Boulevard." Beginnin prior to March 1943 petitioner ran an identical advertisement in the Los Angeles directory. It was doubled in size in September 1944, and changed to read: "Dan Jones Company. Established 1922. Realtors. Exchange specialists. Income, business, and residential., also we buy. Cash today if you wish to sell now. Fltzroy 4107. 3968 Wilshire Boulevard." A portion of his newspaper advertising, described as "institutional," consisted of a daily minimum coverage of two lines. An example is "Dan Jones Company, Inc. Property, 3968 Wilshire Boulevard. *134 " This daily coverage was maintained under a "rate holder" contract with the Los Angeles Times which enabled petitioner to advertise at a reduced rate. Advertising space was also purchased in the Los Angeles Examiner and Herald newspapers. Additional newspaper space was often purchased to advertise the lease, sale, or exchange of individual properties. At least seven of the thirteen properties in issue were individually advertised for sale. For each of the years 1942 to 1946, inclusive, a substantial portion of his net income was reported by petitioner as long-term capital gains. In all but 1942 of that period these reported gains exceeded the total of all other items of income. Until 1945 petitioner maintained no books of account of either his brokerage, rental or personal purchase and sale activities. Various part-time receptionist-stenographers were employed to keep such records as were kept. These were comprised of notes on check stubs, deposit slips, and a ledger of receipts. Real estate transactions were summarized on scratch paper. About the first of 1945 petitioner employed a full-time bookkeeper, and continued to thereafter to employ one during the years in issue. The *135 first bookkeeper worked for him for about six or seven months. Under neither the part-time or full-time bookkeeping systems were petitioner's real estate transactions segregated or earmarked so as to distinguish between property held for sale to customers in the ordinary course of business and property allegedly held for investment or for use in his trade or business. Petitioner and Phyllis had their separate returns prepared by accountants. What records there were, were turned over to the accountants for this purpose. After the returns had been prepared they would go to the accountant's office and sign them. Petitioner and Phyllis obtained an extension of time within which to file their separate 1944 returns to April 14, 1945; the returns were filed July 30, 1945. Although repeatedly put on notice by his accountant to present their 1944 income records for the purpose of filing returns, petitioner was slow to get such records. Petitioner's delay resulted in the delinquent filing. Each filed an affidavit, dated July 26, 1945, in which the delinquent filing was explained as having been occasioned by a change in bookkeepers. Petitioner had no bookkeeper in 1944 and the bookkeeper *136 hired in January 1945 continued to work in that capacity for six or seven months. There was no change of bookkeepers which could have resulted in the delinquent filling of petitioner's and Phyllis' 1944 return. Respondent made three adjustments to petitioner's 1943 reported income tax net income and victory tax net income. The major adjustment related to rejection of petitioner's capital gain treatment of proceeds from sale of several properties. The second was a $2,215.77 addition to income, resulting when commissions earned on four enumerated sales were increased. The last adjustment was made in accordance with petitioner's amended return filed after due date, in which he corrected the statement made on his original return that he was married March 1, 1943, and reported $1,754.89 previously allocated as the alleged spouse's community income. In 1944 among several adjustments respondent made to petitioner's $15,195.31 reported net income was an addition of $2,971.92 termed rental income. About $1,000 of this figure represented returned expense deductions covering repairs made on rental property which respondent treated as capital expenditures. The remaining $1,850.42, termed "Unreported *137 rentals," was explained as net rentals received from three pieces of realty, the Cabrillo Apartments, 11424-8 Santa Monica Building, and 1050 South Westmoreland. Gross rentals from this source were listed at $12,419.88. One-half of the net rentals from the Santa Monica Building and the South Westmoreland property was allocated to one Davis. Petitioner conceded by stipulation the inclusion of the Cabrillo Apartment rentals in his 1944 net income. The other two rentals were not questioned. Another item of $1,874.59 was included in petitioner's 1944 return of net income and listed as petitioner's community half of commissions received from the sale of the following properties: Property Sold
Reported
Corrected
Income Increased
916 S. Lake Street
None
$ 749.17
$ 749.17
529 N. Spaulding
$ 931.30
1,431.30
500.00
Florentine Gardens
None
2,000.00
2,000.00
Don Juan Apartments
2,000.00
2,500.00
500.00
$2,931.30
$6,680.47
$3,749.17
Petitioner put in issue the adjustments relating to the first three properties. By stipulation respondent conceded error in the inclusion of the $749.17 attributed to sale of the S. Lake Street property, and the $2,000 *138 attributed to sale of the Florentine Gardens; petitioner conceded respondent's determination as to the other items. In 1944 as in 1943 a major adjustment made to reported net income related to respondent's inclusion as ordinary income of the gain, reported as long-term capital gain realized from the sale of property. Among the several adjustments respondent made to Phyllis' reported income of $3,486.64 in 1944 was the inclusion of an item of $1,874.58 represented as her community half of gain received from the four above-listed properties. Phyllis put in issue the same first three sales and her and respondent's concessions were identical to those also contested and settled by petitioner. Minor adjustments relating to commission expenditures, contribution and tax deductions were made in 1944 to both petitioner's and Phyllis' reported income. Respondent asserted a five per cent penalty under section 293 (a) of the Internal Revenue Code against petitioner in 1943 and 1944 and against Phyllis in 1944. The explanation in the statements accompanying their respective deficiency notices was that "* * * part of the deficiency [deficiencies as to petitioner] was *139 due to negligence and intentional disregard of rules and regulations * * *." An additional twenty per cent penalty was determined under section 291 of the Code against each for delinquent filing of their respective 1944 returns. During the years in issue petitioner was engaged in the trade or business of dealing in property, and the thirteen contested pieces of property had been held primarily for sale to customers in the ordinary course of petitioner's business. Part of the deficiency asserted against petitioner in 1943 and 1944 and against Phyllis in 1944 was due to negligence or intentional disregard of rules and regulations. The delinquent filing of petitioner's and Phyllis' 1944 income tax returns was not due to reasonable cause. Opinion That petitioner was engaged in the business of buying and selling real property for profit appears to be conceded. We have found as an ultimate fact that the properties in issue were held by him primarily for sale to customers in the ordinary course of that business. See Greene v. Commissioner (C.A. 5), 141 Fed. (2d) 645, certiorari denied, 323 U.S. 717. This finding is dispositive of the principal issue. Under *140 the circumstances, any purchaser who could be located was necessarily a customer. Charles H. Black, Sr., 45 B.T.A. 204, 210. And petitioner's attempts through his testimony to ascribe other motives, are, unfortunately, unworthy of credence, both because of their inherently unconvincing character and on account of the evident unreliability and inconsistency of petitioner's statements both during the hearing and in other connections. Of these, the numerous examples need not be detailed, although some appear in our findings. Suffice it to say that by the usual tests of frequency, continuity, activity and extensiveness, the dealings in the contested properties, like those conceded, cannot be removed from ordinary income treatment. See e.g. Boomhower v. United States (D.C.N.D. Ia.), 74 Fed. Supp. 997. As to the penalty questions, petitioner's flagrant violation of his obligations to report large amounts of gross income, the misrepresentation of his marital status, the unconvincing nature of his reason for failing to file any 1944 return until long after the extended period had expired, in spite of the admitted urging by his tax advisor to do so, taken with the *141 record as a whole, leave us no alternative but to conclude that both negligence and delinquency penalties should be approved; especially considering that respondent is making no claim of fraud, and accordingly is not required to carry the burden of proof. Cf. Arlette Coat Co., 14 T.C. 751. Petitioner Phyllis I. Jones did not testify, and no more convincing reason is apparent why the penalties should not be imposed in her case than with respect to the other petitioner. The imposition of both penalties is thus required as to both petitioners. Decision will be entered under Rule 50. Footnotes
*. The year 1942 is involved by reason of the forgiveness feature of the Current Tax Payment Act of 1943. ↩
**. The year 1947 is involved by reason of a claimed net operating loss carry-back from 1947.↩
*. Net rentals and losses are given for year of sale. Adj.
Designation
Basis
Gains Explanation of discrepancies in gain realized not disclosed.
**↩
1. 5134 De Longpre
$30,712.50
$ 9,508.90
2. 504 Hobart
20,051.75
4,550.89
3. Longwood
3,000.00
3,271.30
4. 342 Orange
7,910.70
7,495.50
5. Hollywood Gramercy
12,004.75
7,872.60
6. Western Ave.
5,540.00
5,627.85
7. 2400 Inverness
14,059.37
16,238.04
8. 11424 Santa Monica
26,108.03
22,765.10
9. Palm Springs
27,362.56
24,249.77
10. Rossmore and Arden
6,980.17
7,640.15
11. 240 Hill
75,188.67
68,595.05
12. 7017 Melrose
4,250.00
10,167.66
13. 2018 Vista DelMar
10,846.89
15,896.62