Frank R. Southers v. Commissioner.
Southers v. Commissioner
Docket No. 5267-68.
United States Tax Court
T.C. Memo 1970-242; 1970 Tax Ct. Memo LEXIS 118; 29 T.C.M. (CCH) 1062; T.C.M. (RIA) 70242; August 26, 1970, Filed. Moses Goldberg, San Antonio Savings Bldg., San Antonio, Tex., for the petitioner. Robert J. Curphy, for the *119 respondent. TANNENWALD
Memorandum Opinion TANNENWALD, Judge: Respondent determined a deficiency of $4,040.78 in petitioner's income tax for the taxable year 1966. Because of certain concessions by the petitioner, the only issue before us concerns the 1063 Commissioner's disallowance of all but $100 of a loss claimed by petitioner with respect to the foreclosure of certain real estate. This is a fully stipulated case. The stipulations of facts and the exhibits thereto are incorporated herein by reference. Petitioner was a legal resident of San Antonio, Texas, at the time the petition herein was filed. His cash basis return for the taxable year 1966 was timely filed with the district director of internal revenue, Austin, Texas. On September 25, 1965, petitioner loaned $100 to Marie C. Chambers (hereinafter Chambers). As collateral for the loan, Chambers executed a deed to petitioner. The deed recited consideration of $10 "and other good and valuable consideration already paid and the assumption of any encumbrances thereon." At the time, the Veterans Administration held a mortgage on the premises actually owned by Chambers. The terms of the loan from petitioner *120 to Chambers were that if the loan was not repaid by November 1, 1965, petitioner would have the right to record the deed. The loan was not repaid, and petitioner recorded the deed on November 3, 1965. The deed given by Chambers to petitioner was defective in that it incorrectly described the real estate owned by Chambers. Chambers owned "Lot Eleven (11)" of a certain tract, but the deed given to petitioner recited "Lot 1" of the same tract. On or about February 1, 1966, the unpaid balance on the mortgage on the real estate owned by Chambers was $8,207.68. On February 1, 1966, the trustee of the mortgage, pursuant to a power of sale contained in the mortgage, held a public sale of the real estate. The Veterans Administration bid the property in for $8,000. The sales proceeds were applied in partial payment of the outstanding unpaid balance of the mortgage. The focal point for decision is the amount of petitioner's loss. Petitioner claims that he is entitled to deduct at least the sum of $8,307.68, representing his cash outlay plus the unpaid balance of the mortgage at the time of the foreclosure. Alternatively, in his reply brief, petitioner claims that he lost his equity in the *121 property by virtue of the foreclosure and that he is entitled to deduct the value of that equity. Respondent has raised no question as to the propriety of petitioner's deduction of an ordinary loss under section 165 but asserts that the amount of the loss should be limited to petitioner's actual cash outlay, to wit, $100. [1] For the reasons hereinafter stated, we agree with respondent. Neither party disputes the proposition that a foreclosure sale constitutes an event which gives rise to gain or loss. Helvering v. Hammel, 311 U.S. 504 (1941); Woodsam Associates v. Commissioner, 198 F. 2d 357 (C.A. 2, 1952), affirming 16 T.C. 649 (1951). [2] Moreover, for the reasons hereinafter stated, we need not explore all *122 the ramifications involved in determining the extent to which the unpaid amount of a mortgage, whether assumed or not, is includable in the basis of purchased property. Cf. Crane v. Commissioner, 331 U.S. 1 (1947); Parker v. Delaney, 186 F. 2d 455 (C.A. 1, 1950); Manuel D. Mayerson, 47 T.C. 340 (1966); D. Bruce Forrester, 4 T.C. 907, 916 (1945); but see Columbus & Greenville Railway Co., 42 T.C. 834, 847 (1964), affirmed per curiam, 358 F. 2d 2994 (C.A. 5, 1966). The unusual aspect of this case stems from the fact that the deed from Chambers to petitioner was defective in that it incorrectly described the premises. Thus, if the deed were held to be controlling, petitioner never received title to the foreclosed property and never became responsible in any way for the mortgage. Petitioner argues, however, that, under Texas law, he assumed *123 a direct liability to Chambers for $8,207.68, the amount of the mortgage indebtedness, [3] which was separate from any 1064 liability of the petitioner personally, or of the property, with respect to the mortgage itself. He further contends that, under Texas law, reformation of the deed would be forthcoming and that consequently he had an absolute and unconditional liability to pay that amount. We find it unnecessary to determine the precise impact of the applicable local law. It is clear that even if there was such an independent liability to Chambers, it was a liability simply to pay the indebtedness to the mortgagee. Under such circumstances, the $8,000 proceeds of the foreclosure sale would pro tanto reduce any such liability. Cf. Crane v. Commissioner, supra; Mendham Corporation, 9 T.C. 320 (1947). Moreover, the parties have stipulated that the proceeds were applied in partial payment of the mortgage indebtedness. Thus, *124 at best, petitioner would be entitled to an additional deduction of $207.68 beyond that allowed by respondent. But we think that he is not entitled even to this limited deduction. Assuming without deciding that he might ultimately be held responsible for the mortgage deficiency, it seems to us that, at the very least, litigation would be a necessary precondition to fixing such liability. There is no evidence that any action was instituted, much less successfully concluded, or that petitioner has otherwise been held accountable for such deficiency. Consequently, his liability, if any, was sufficiently contingent to require the conclusion that it should not be taken into account in determining the amount of his basis. Columbus & Greenville Railway Co., supra; Albany Car Wheel Co., 40 T.C. 381 (1963), affirmed per curiam, 333 F. 2d 653 (C.A. 2, 1964). In view of our conclusion, we do not reach the question whether an absolute but unpaid liability of a cash basis taxpayer should be included in the basis of property for the purpose of determining loss sustained as the result of a mortgage foreclosure. Compare Charles H. Black, Sr., 45 B.T.A. 204, 210-212 (1941); *125 Harry H. Diamond, 43 B.T.A. 809, 811-812 (1941); Rev. Rul 55-119, 1955-1 C.B. 352. With respect to petitioner's alternative argument, it is difficult to determine whether petitioner is claiming that the value of his equity is equal to the full market value of the property (which petitioner asserts was in excess of the $9,050 deducted on his 1966 return) [4] or the excess of such market value over the amount of the mortgage. In either case, petitioner's claim is utterly without merit. Aside from the fact that such claim was belatedly raised, we have no probative evidence of the value of the property in question herein. The only evidence was "two deeds to real property * * * located near the [Chambers] property," attached to the supplemental stipulation of facts. Aside from a plat drawing, no evidence as to comparability was submitted and there is no evidence, aside from inferences to be drawn from the amount of the documentary stamps affixed, as to the prices actually paid for the properties. Such tenuous indications of value fall far short of satisfying the petitioner's burden of proof. Rule 32, Tax Court Rules of Practice; cf. Estate of Tony Cordeiro, 51 T.C. 195, 203 (1968). *126 Beyond this, the amount of any deductible loss would be limited to the $100 conceded by respondent. Section 165(b); Therese C. Johnson, 7 T.C. 465 (1946), affirmed on this point, 162 F. 2d 844 (C.A. 5, 1947). Petitioner is merely seeking to deduct the loss of anticipated gain. This he may not do. Cf. Hendricks v. Commissioner, 406 F. 2d 269 (C.A. 5, 1969); Alsop v. Commissioner, 290 F. 2d 726 (C.A. 2, 1961); Maurice P. O'Meara, 8 T.C. 622, 632-633 (1947). The substance of this case is that petitioner had no measurable loss beyond the amount allowed by respondent. That is the limit of his deduction. Decision will be entered for the respondent. 1065 Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended. Petitioner's 1966 return described the property as "business property" and respondent has raised no issue in this regard, in all probability because petitioner claimed no capital losses, with the result that even if the loss were considered a capital loss, petitioner would have been entitled to deduct the $100 against ordinary income. Secs. 165(f) and 1211(b).↩
2. Respondent, presumably because of the peculiar facts herein, does not contend that petitioner had a right of redemption which would cause the time of loss to be postponed until the year that right expired. See 5 Mertens, Law of Federal Income Taxation, sec. 30.85.↩
3. We were furnished with no specific evidence as to the unpaid balance of the mortgage indebtedness on the date the deed was recorded but it can be inferred that it was the same as the amount unpaid at the time of foreclosure.↩
4. The record contains no indication as to how the figure of $9,050 was determined.↩