**FORAN et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11984.

Circuit Court of Appeals, Fifth Circuit.

Jan. 20, 1948.

Muckleroy McDonnold, of San Antonio, Tex., for petitioners.

I. Henry Kutz, Sewall Key, Robert N. Anderson and Louise Foster, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bur. Int. Rev., and Bernard D. Daniels, Sp. Atty., Bur. Int. Rev., both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Taxes for 1941 on community incomes are in dispute, and the particular question is whether gain realized during that year in selling certain oil producing properties in Texas which were bought in 1938 and 1939 is taxable as long term capital or ordinary gain. The Tax Court held the latter.

This property, owned by the taxpayers for more than eighteen months, is a capital asset unless under the exclusions stated in Internal Revenue Code, § 117, 26 U.S. C.A. Int.Rev.Code, § 117, it was "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". The court found that the head of the community, Lester Foran, was "engaged in the oil and gas royalty and brokerage business for several years before and during 1941 wherein he bought and sold oil royalties for others on a commission basis. He also purchased and sold some gas properties in his own name". There is no finding that the latter amounted to a business. It is then found that the properties in controversy were acquired by Foran more than eighteen months prior to his sale of them in 1941, and that before the acquisition was complete they had all been proven to be oil producing and that later wells were drilled on them, and before the time of sale they were yielding Foran a monthly income of $400 per month; but this income had been assigned to a mortgagee to repay a loan of $15,000 made to acquire capital to further conduct his business; that the wells were estimated to have a flowing life of twenty-five years and a pumping life of fifteen to twenty years thereafter; that Foran had never sold a producing oil property before, and had never offered this property for sale; and that just before the sale the major oil companies attempted to have the method of allocation and production in this oil pool changed in such a way as to radically reduce the income from Foran's property.

Foran's testimony was the only evidence before the court, and the foregoing findings are based on his testimony alone. He also testified that he had in his family, besides his wife, four children, the oldest being fourteen years old; that he had no steady income from his brokerage business, and when the properties in controversy became proven as producing properties he decided to hold them as an investment. He never offered them for sale, and when on June 10, 1940, he borrowed the $15,000 it was to be repaid out of the income, and at that time he had no purpose of selling the property; the decision to sell in 1941 was made because of the effort of the major oil companies to change the allocation in such a way as would curtail his income from it. On cross-examination Foran stated that he had records of the oil and gas leases that he had bought and sold, but did not have them with him.

The Tax Court believed everything that Foran said except his positive testimony that when this property proved productive, yielding an income of $4,800 per year probably for forty or forty-five years to come, he decided to keep it for his family and so held it for more than eighteen months. We note that when he needed money in 1940 he did not sell it, but borrowed $15,000 on the production, which would pay the loan in less than four years. The effort of the

large oil companies to alter allocations to Foran's detriment the court finds to be a fact, and also that he had not before offered this property for sale, but it refused to accept his oath that the sale was thus caused, and held it was for sale all the time in the course of his business.

To justify this the Court in its opinion asserts that Foran "made no special entry on his books by which this property was handled differently from any other property". There is no evidence to that effect; Foran was asked no question about it, and all he said was that he had a record of what was bought and sold but did not have it with him. We know of no requirement to make a separate record of what is held for sale and what is not. There is no evidence that Foran had separate records of that sort.

The Court cites to sustain itself its case of Charles H. Black, Sr. v. Com'r, 45 B.T.A. 204. In that case the Board apparently accepted the taxpayer's testimony as to his intention. Also cited is Greene v. Commissioner, 5 Cir., 141 F.2d 645, 646. The distinction between that case and this is found in the majority opinion in these words: "There was no direct proof of intent or purpose even in the testimony of Mr. Greene (the taxpayer), and the Tax Court was required to draw an inference as to this ultimate fact from the circumstantial evidence relevant thereto." Here there is direct and positive evidence from the witness who best knows, that this property was for eighteen months being held as an investment and not held for sale to customers. His testimony is consistent with every proven fact. He gives a credible reason why it was not for sale and why finally in 1941 he did sell it. We think the court's refusal to follow the sworn testimony is contrary to law, and requires the setting aside of its fact-finding as it would that of a jury. We quote from Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, at page 340, 53 S.Ct. 391, 394, 77 L.Ed. 819, "And the desired inference is precluded for the further reason that respondent's right of recovery depends upon the existence of a particular fact which must be inferred from proven facts, and this is not permissible in the face of the positive and otherwise uncontradicted testimony of unimpeached witnesses consistent with the facts actually proved, from which testimony it affirmatively appears that the fact sought to be inferred did not exist. This conclusion results from a consideration of many decisions, of which the following are examples: (citing cases.) A rebuttable inference of fact * * * 'must necessarily yield to credible evidence of the actual occurrence.'" We recognize that intent may be proved by circumstances, and that a party's testimony as to his intent may be rebutted by proof of circumstances which are inconsistent therewith. We hold that no circumstance found by the Tax Court here is inconsistent with the reasonable and uncontradicted testimony of Foran.

The judgment is set aside, with direction to redetermine the taxes in accordance with this opinion.

Reversed.