### MERRILL v. COMMISSIONER OF INTERNAL REVENUE.

No. 27, Docket 20913.

United States Court of Appeals Second Circuit.

March 9, 1949.

Richard P. Jackson, of New York City (Chadbourne, Hunt, Jaeckel & Brown, of New York City, of counsel), for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and Harry Baum, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This proceeding involves a deficiency in the petitioner's income tax liability for the year 1941, resulting from the disallowance of a deduction of $41,281.28 claimed as a net operating loss carry-over from 1940.[1] Deduction for a net operating loss is allowed under § 23(s) but is computed under § 122 of the Internal Revenue Code, 26 U.S.C.A. §§ 23(s) and 122. The correctness of the Tax Court's approval of the Commissioner's disallowance of the deduction is the sole question presented.

Joseph L. Merrill, the petitioner, filed his income tax returns on the cash basis. Until he retired therefrom on March 31, 1939, he was a general partner in a New York limited partnership which carried on a stock brokerage business.[2] On the date of retirement his capital account on the firm books had a balance of $55,368.50. On April 26, 1939 his personal account was charged with $17,887.76 and his capital

---

[1] The amount claimed was $43,848.43 but the parties are now agreed that the correct figure is $41,281.28.

[2] The partnership agreement provided that in the event of the retirement of a general partner, the remaining general partners should have the right to continue the business for the remainder of the unexpired term of the partnership. The term of the partnership originally expired December 31, 1939 but the stipulation of facts states that by subsequent agreements "the term has been extended to expire December 31, 1948."

account credited with a like sum, making it $73,256.26. Because of "various large unliquidated disputed and undeterminable claims and items in litigation pending against" the firm, the petitioner and the remaining partners disagreed as to whether the balance in his capital account was sufficient to cover his share of these contingent partnership liabilities. During 1939 his capital account with the firm was charged $73,256.26 on account of such liabilities, and was thus wiped out. In 1940 in settlement of the dispute the petitioner accepted this charge as correct and paid the firm an additional $60,000, making a total of $133,256.26. By the settlement agreement he released all interest in the firm assets, except certain doubtful accounts receivable,[3] and the continuing partners assumed his liability for all firm debts. After his withdrawal from the firm in 1939 Merrill continued actively in business of a similar character in his own behalf and realized substantial income from these activities. Early in 1940 he became a limited partner in a new firm which took over the business of the old firm from which he had retired.[4] In his 1940 income tax return he claimed as an ordinary loss the sum of $133,256.26 paid in settlement of his share of firm liabilities pursuant to the above mentioned agreement and reported a net loss for that year. The amount of such loss[5] he sought to deduct in his 1941 return. The Commissioner ruled that the taxpayer did not sustain a statutory "net operating loss" in 1940, and the Tax Court has affirmed his ruling.

Section 122(a) of the Code defines a net operating loss as "the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d)." Paragraph 5 of subsection (d) reads as follows:

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. * * *"

Also relevant is section 189 which provides that "the benefit of the deduction for net operating losses allowed by section 23 (s) shall not be allowed to a partnership but shall be allowed to the members of the partnership under regulations prescribed by the Commissioner with the approval of the Secretary."[6]

The basic issue is whether Merrill's loss of $133,256.26 arose from a business regularly carried on by him within the meaning of § 122(d) (5). He argues that inasmuch as he has continued in business on his own account similar in nature to that conducted by him as a partner, the payment of liabilities incurred by him as a partner is attributable to business activities which he has regularly carried on over a period of years. The Tax Court was of opinion that the 1940 settlement agreement amounted to a sale by Merrill of his partnership interest to the remaining partners and disallowed

---

[3] His pro rata share of these accounts receivable had a face value of $61,595.48. He testified that they had no value in 1940. In later years recoveries were made from which he received $8,732.68, which he reported as income in the years of receipt.

[4] So the Tax Court found, although the stipulation of facts states that the firm was "reorganized" and "changed its name."

[5] See note 1, supra.

[6] Treasury Regulations 103 provides: "Sec. 19.189-1. [As amended by T.D. 5217, 1943 Cum.Bull. 314, 337-338] Net Operating Loss Deduction in the Case of Partners.—The benefit of the deduction for net operating losses provided by section 23(s) for taxable years beginning after December 31, 1939, shall not be allowed to a partnership. In computing his own net operating loss or his own net income (where required to be computed in accordance with the exceptions and limitations provided in section 122 (d) (1) to (4), inclusive) for any taxable year for the purposes of computations required by section 122, however, each partner shall take into account the income and losses of the partnership in accordance with sections 182 to 188, inclusive, with the following exceptions and limitations: * * *" [There then follow subsections (a) and (b) containing the exceptions and limitations applicable in the computation of a partner's net operating loss and net income.]

the loss because he was not in the business of buying and selling partnership interests. We are not impressed by this argument. Merrill's interest in the partnership was a minus quantity—a liability, not an asset. His payment was to obtain a discharge of his obligation to his partners to contribute his share of contingent firm debts. To regard this as a "sale" disregards realities; he could as well have paid a third party to agree to hold him harmless against the claims of firm creditors. Nevertheless we agree with the Tax Court's decision that he did not sustain a statutory "net operating loss" in 1940.

The respondent contends that the statutory provisions and implementing regulations above referred to show that a deduction by a partner in his individual return for any taxable year is "not attributable to the operation of a trade or business regularly carried on" by him unless it reflects his pro rata share of the partnership's business deductions; and consequently the only statutory net operating loss which Merrill could sustain in 1940 would be one computed on the basis of his distributive share of the firm's 1940 business losses. If the Commissioner is right that would end the case, for the record does not disclose what losses, if any, the firm sustained in 1940, nor whether they were capital losses or ordinary losses, nor what was the taxpayer's share of such losses as the firm may have sustained in that year. But the petitioner replies that section 19.189-1 when read in its context does not support the respondent's construction; that by its very terms it does not add any further requirements to section 122(d) (5). Which construction is correct is far from clear but the dispute need not be decided. Even if it be assumed arguendo that the petitioner is right, we are still of opinion that the payment he made in 1940 is not a deduction allowable

under that section. The settlement was not with the creditors who were asserting claims against the partnership; as to them he still remained liable despite his retirement from the firm. Had his payment been made to discharge him from firm debts which were acknowledged to be due, we think he would have sustained a statutory net operating loss. See Burnet v. Marston, 61 App.D.C. 91, 57 F.2d 611. But here the debts were uncertain and contingent; we cannot know whether what he paid was "attributable to the operation" of the firm business, if by that is meant a debt due from its operation, which, we submit, is what it must mean. The contingent claims were disputed and no one knew how large were those debts or whether they were debts at all. What Merrill received in exchange for his payment to the firm and his release of the continuing partners' obligation to account to him, except for the doubtful accounts payable, was their promise to hold him harmless against the claims of firm creditors. A payment made to obtain such a guaranty is not, in our opinion, a loss "attributable to the operation of a trade or business regularly carried on by the taxpayer" within the meaning of section 122(d) (5). No decision has been cited by either side which has any direct bearing on the problem.

The respondent urges as an alternative ground for affirmance that $73,256.26 of the loss—sufficient to wipe out the amount of the claimed "carry over"—was sustained in 1939 rather than 1940. But we think petitioner's answer is sound, namely, that the unilateral action of the firm in making the 1939 charges on its books was not actually accepted and agreed to by the petitioner until the 1940 settlement. For the reasons previously discussed the decision is affirmed.