CHARLES WEILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27030.   Promulgated September 20, 1951.

*Harold Kornfeld, Esq.*, for the petitioner.
*Michael J. Kenny, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* The question before us here is whether section 122 (d) (5) of the Internal Revenue Code limits the loss, taken in 1944, on a real estate foreclosure, and claimed as a net operating loss carry-over to 1945. Under the statute, unless the deduction of the net operating loss carry-over claimed is "attributable to the operation of a trade or business regularly carried on by the taxpayer," it is limited, and the limitation the parties tacitly agree would eliminate petitioner's claimed deduction. Our inquiry therefore is simply whether the deduction is to be attributed to a trade or business of the taxpayer, regularly carried on. Petitioner points out that in *Walter G. Morley,* 8 T. C. 904 (916), we indicated that it is not necessary that the loss be attributed to a business regularly carried on in the year of the loss. We therefore direct our attention not only to the years 1944 and 1945 but to the year 1925, when the petitioner's property, at the time of purchase, was subjected to the mortgage foreclosed in 1944.

The petitioner's first and principal argument is: "The petitioner was a dealer in real estate." We have carefully studied all of the

facts and circumstances involved which, having been set forth in considerable details in our findings, we think need not be referred to extensively here. After such study we are of the opinion that the petitioner was not a dealer in real estate. The petitioner stresses the idea that he purchased real estate with the intent to resell it, and points out that in 12 cases (out of 48 transactions found by us) the property was resold within one day of purchase. Undoubtedly this fact is to be considered and it has been carefully considered, but the purpose of acquisition of the property is not so important as the activities of the owner while he holds the properties. *Dunlap* v. *Oldman Lumber Co.*, 178 F. 2d 781. Though property was acquired for one purpose, such as resale, the purpose may change and the property actually be held for investment. *Foran* v. *Commissioner*, 165 F. 2d 705; *Brown* v. *Commissioner*, 143 F. 2d 468; *Leonhard Felix Fuld*, 44 B. T. A. 1268, affd. 139 F. 2d 465. So far as effect of sales within one day of purchase is concerned all of these except one took place in or prior to 1923, some two years before the acquisition of the property involved here. The last such quick sale ever made by the petitioner was in 1925, nineteen years before the loss involved in this case.

The petitioner though admitting that the claim of occupation is not conclusive points out, in effect, that in his income tax returns for many years he gave his occupation as "real estate operator" or "real estate, etc." Either of the expressions, in the mind of the petitioner as a layman, must reasonably be considered as not bearing any technical meaning or as indicating a dealer in real estate rather than one owning and renting it. We, therefore, ascribe not much weight to the appellations given by the petitioner to his occupation in his returns.

It has long been recognized that the frequency of the activities relied upon to establish a business of dealing in real estate is highly important, that mere intermittent disposition of investment assets is not engaging in the business of selling property, and that carrying on business implies substantial regularity. *Fahs* v. *Crawford*, 161 F. 2d 315. Here the petitioner made only one sale after the year 1938, up to 1945, and in 26 years, from 1919 to 1945, made only 34 sales, an average of a little more than one per year. Properties held more than 1 year and sold were held from 1 to 13 years. The properties foreclosed upon had been held by the petitioner from 9 to 22 years, only one being held less than 12 years. Of the seven properties held by the petitioner at the end of 1945, two, he testified, had been held for 35 years and three for 30 years and he did not know about the others. The property here involved was held for 19 years before being foreclosed upon. Under the evidence we can not but conclude that the

petitioner was not, either in 1944–45 or in 1925, a dealer in real estate as contended. It is clear, we think, that though in the earlier years he made some quick sales, from 1925 on it can not be said that he was primarily in the business of turning over real estate; for the evidence plainly indicates that if a property would pay he would retain it and did retain it for many years in many cases and in many others for several years. He rented his properties and preserved them if they would pay. The idea that he "milked" properties which did not pay, that is, did not spend money for taxes or expenses and let them go by foreclosure, is by the evidence shown to be greatly overworked; for not only were foreclosures limited to seven in number throughout the 26 years but the seven properties foreclosed on had been held for 9, 12, 15, 16, 19, 20 and 22 years, respectively, while five of the seven properties he held at the end of 1945 had been held from 30 to 35 years. Thus it appears that in only seven cases out of 48 did the petitioner fail to make a lasting rental-bearing proposition out of the property, and even in those cases they were profitable for long periods, as otherwise on the petitioner's theory he would have permitted earlier foreclosure.

He kept up the properties, with his brother and his brother's two assistants in charge, for a minimum of nine years before he permitted any foreclosure. In addition, he had other investments in a partnership in a meat market which bought five houses for investment, in the language of the petitioner. He was interested in an apartment house which was rented to tenants for 32 years. He invested also in a restaurant-bar-grill. From all of these facts we can only conclude that the petitioner was not a dealer in real estate; and we so hold.

In the alternative, the petitioner argues that if the owner of real estate devotes it to rental purposes the property is used in trade or business and the loss or foreclosure thereof was a fully deductible loss in 1944 under section 117 (j), Internal Revenue Code, therefore that such loss was attributable to a business regularly carried on, so as to avoid the limitation of section 122 (d) (5). Even assuming that the petitioner was in the business of renting real property, the contention is without basis, under *Joseph Sic*, 10 T. C. 1096,[1] affd. 177 F. 2d 469; *Lazier* v. *United States*, 170 F. 2d 521; *Joseph L. Merrill*, 9 T. C. 297, affd. 173 F. 2d 310; *Smith* v. *United States*, 180 F. 2d 357 (involving as here, sale of rental real estate, an apartment building by one

---

[1] In the *Sic* case, we quoted *Dalton* v. *Bowers*, 287 U. S. 404 (involving, in section 206 of the Revenue Act of 1924, the same language here involved), as follows:

> By the statute allowing the deductions and carrying over the loss for two years Congress intended to give relief to persons engaged in an established business for losses incurred during a year of depression in order to equalize taxation in the two succeeding and more profitable years. It was not intended to apply to occasional or isolated losses.

The Supreme Court was quoting the Circuit Court of Appeals, which it affirmed.

having extensive holdings and interests, who over a period of about 12 years had purchased properties worth $100,000 and sold properties worth $300,000 but, as here, was not a licensed real estate agent).

Again in the alternative, the petitioner asserts that his varied activities as a whole constituted a trade or business regularly carried on, to which the loss on foreclosure was attributable, therefore section 122 (d) (5) does not limit the operating loss therefrom. Only *Henry E. Sage*, 15 T. C. 299, is cited.

We think that case does not control here. In the *Sage* case the loss involved was taken upon a loan to a corporation in which the petitioner, in line with his great number of different activities, was a stockholder. He had organized the company, obtained for it a mining lease, spent several months at the mine, kept in touch with it and interviewed people with regard to the financing and operation of the mine. We concluded that the loss was a part of his regular business. Sage made no sale of property but a loan. The instant question is there absent. Here the loss involved occurred because of foreclosure on real estate owned by the petitioner for about 19 years. In addition to his real estate holdings and activities the petitioner here had two or three side lines. It can not, we think, be said that in the foreclosure sale involved he was *operating* in the same manner as was Sage who was, under the facts there found, in a business of participating in a great many various activities, corporate and otherwise, to which he had devoted his time, interests and money. He appears in effect to have been operating a business of financing enterprises in which he became interested, including lending money to them, resulting in the bad debt involved. The question here is whether the foreclosure on property from which petitioner had for years obtained rents was attributable to the *operation* of a trade or business regularly carried on by him. If it was attributable rather to the mere ownership of real estate, it is not attributable to the operation of a trade or business comparable to that of the petitioner in the *Sage* case. The question therefore resolves itself in the final analysis to one as to whether the petitioner was a dealer in real estate so that the loss from foreclosure of a parcel of real estate was a true business loss. Unless he was a dealer, sale of his property did not result in loss due to *operation* of a business. In our opinion, the facts here involved do not demonstrate a business activity on the part of the petitioner which as a whole can be denominated a business to the operation of which, if petitioner was not a dealer in real estate, the foreclosure on a parcel of real estate is attributable. Petitioner here was not in the business of making loans. He testified that he made none. Under the logic of the *Sic, Merrill, Lazier,* and *Smith* cases, *supra,* even if the petitioner had the broad business claimed under this particular contention, the

foreclosure sale of property merely held would not be attributable to the *operation* of a business as required by section 122. The loss here, to be carried over, must not only be attributable to a trade or business but to trade or business regularly carried on. That there is a deep seated distinction between an investor and a real estate dealer can not be doubted. *Higgins* v. *Commissioner*, 312 U. S. 212. Moreover, that Congress intended to make a difference between losses in "trade or business" and those in mere profit transactions is indubitable in the light of the distinction created by section 23 (e) (1) and (2) of the Internal Revenue Code. No erasure of the line between trade or business and general activities involving profit is permissible and it can not be said, without disregarding section 23 (e) (1) and (2), that one is in trade or business merely because he has entered various fields of profit activity. In *Ralph C. Holmes*, 37 B. T. A. 865, referring to *Hutchings* v. *Burnet*, 58 F. 2d 514, we said that " 'trade or business' as used in the revenue statutes bears a more restricted meaning that the general definition of what constitutes business transactions." Very recently in *Chester C. Hand, Sr.*, 16 T. C. 1410, we recognized that Congress had limited "perhaps arbitrarily" the concept of trade or business, holding that an employee was not in trade or business, though he had incurred various and extensive expenses in carrying on his work. The use, in section 122 (d) (5) here involved, of the identical phrase found in section 23 (e) (1)— "trade or business"—and not the expression in section 23 (e) (2)— "entered into for profit"—clearly points out the particularity of the Congressional intent in section 122 (d) (5). It should be kept in mind also that section 122 (d) (5) was enacted by section 211 (b) of the Revenue Act of 1939, prior to the new provisions in section 23 (a) (2) added by section 121 (a) and (d) of the Revenue Act of 1942, and providing for the first time for deduction of "non-trade or non-business expenses"—and that even therein Congress recognized the difference between expense of trade or business and those not in that category—in short, preserved the distinction. Section 122 (d) (5) does not permit, and can not in the face of section 23 (e) (1) and (2), rationally permit a concept of deduction of losses, or carry over thereof, outside the statutory idea of trade or business. Yet this is what petitioner here seeks, in contending that his activities as a whole constitute trade or business. Indeed, in first arguing that he was a dealer in real estate, he tacitly recognizes the statutory limitation on the concept of trade or business. We can not, therefore, agree with petitioner's second alternative argument, and hold that the foreclosure loss was not attributable to operation of a business consisting generally of his activities as a whole.

We conclude and hold that within the language and intendment of section 122 (d) (5) of the Internal Revenue Code the loss sustained

by the petitioner in 1944 on the foreclosure of mortgage on the property at 130 West Houston Street and the deduction thereof was not attributable to the operation of a trade or business regularly carried on by the taxpayer. The deduction of the loss as a net operating loss carry-over from 1944 to 1945 is therefore denied.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

KERN, *J.*, dissents.

---

BLACK, *J.*, dissenting: I disagree with the holding of the majority opinion wherein it holds that the petitioner was not a dealer in real estate and his activities in real estate did not constitute a trade or business regularly carried on by him to which the loss on the foreclosure was attributable.

It seems to me that the facts found in the majority opinion show that when petitioner purchased the parcel of real estate in question he was clearly in the real estate business and that he purchased the property in question for resale at a profit. I think also that the facts show that petitioner continued in the real estate business up to and including the taxable year which is here involved and that the parcel of real estate in question was held for sale in petitioner's real estate business. These being the facts and circumstances, it seems to me that petitioner is entitled to the net loss carry-over which he claims under section 122 (d) (5), I. R. C. See *Walter G. Morley*, 8 T. C. 904. It seems to me that the majority opinion is contrary in principle to what we held in the *Morley* case.

I, therefore, respectfully dissent.

MURDOCK and JOHNSON, *JJ.*, agree with this dissent.