C. F. Shield and Carolyn M. Shield v. Commissioner.
Shield v. Commissioner
Docket No. 46410.
United States Tax Court
T.C. Memo 1954-4; 1954 Tax Ct. Memo LEXIS 246; 13 T.C.M. (CCH) 360; T.C.M. (RIA) 54110; April 8, 1954, Filed *246 Petitioners engaged in a gold mining venture. The venture proved unprofitable and operations ceased on October 1, 1946. Thereafter certain equipment which had been used in the venture was disposed of. Petitioners maintain that the equipment was disposed of by abandonment. Respondent maintains that the disposition was by sale. Petitioners suffered a loss as the result of disposition of the equipment. Held, the loss sustained by petitioners on the disposition of the mining equipment was not allowable as a net operating loss carry-over because not attributable to the operation of a trade or business regularly carried on by the taxpayers, I.R.C. 122(d)(5), whether the loss be attributable to sale or abandonment. George V. Whittle, C.P.A., Smith Building, Seattle, Wash., for the petitioners. Francis J. Butler, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion Respondent determined a deficiency for the year ended December 31, 1948, on the basis of disallowance of a loss on the disposition of certain business assets. Petitioners had deducted the loss as a net loss carry-over from the year 1946. The disallowance was made *247 on the ground that the loss was not attributable to the operation of a trade or business regularly carried on by petitioner and, therefore, was not allowable as a net loss carry-over. By stipulation, the parties agreed that, regardless of the outcome of the proceeding, the loss claimed as a net loss carry-over was overstated by $191.80, necessitating a computation under Rule 50. Finding of Fact The case was submitted upon stipulation of facts without oral testimony. We adopt by reference paragraphs 1 to 8, inclusive, of the stipulation as part of our findings of fact. Paragraphs 9 and 10 of the stipulation purport to set forth what the testimony of the petitioners would have been if they had been called to testify in certain respects. We find as facts the testimony attributed to petitioner in paragraph 9. As to paragraph 10, the statement of proposed testimony appears to be a mere conclusion which we find to be inconsistent with the facts as determined from the stipulation as a whole. We do not, therefore, accept the statement in paragraph 10 of the stipulation as a fact. In paragraph 6 of the stipulation, petitioners agree that when the mining operations ceased, the wanigan *248 (one of the items of equipment listed in paragraph 5 of the stipulation) was sold for $200. Petitioners maintain that the remaining items of equipment were abandoned. We find, as an ultimate fact based upon consideration of the entire stipulation, that the remaining items were sold to Northern Commercial Company in consideration of the release by that company of petitioners' liability to the company of $7,796.66. The facts will be discussed in our opinion to the extent necessary in reaching our conclusion. Opinion FISHER, Judge: Petitioners moved to Alaska in 1946. Previous to that time, they had owned a truck hauling business and a chicken ranch. On February 17, 1946, petitioners engaged in a gold mining venture in the Manley Hot Springs area of Alaska. The operation proved unprofitable and it was stopped on October 1, 1946. At the time the operation ceased, petitioners had certain equipment which had been used in the venture. The items and the cost of each were set forth in the stipulation of facts. In connection with the mining venture, petitioners had purchased supplies, repair services, and other miscellaneous items from the Northern Commercial Company on open account, *249 on which there was a balance of $7,796.66 due at the time that the mining venture ceased operations. After operations ceased, one of the items (the cost of which was $1,000) was sold for $200, and the balance of the equipment was left at the mining grounds. The total cost of the equipment under consideration, including the item sold, was $9,603.02. Petitioners contacted the Northern Commercial Company and advised the company that they were unable to pay the balance due on the open account. The machinery, other than the items sold, was moved by the Northern Commercial Company to a tract of land owned by it, and petitioners then gave the company a bill of sale for the equipment and for diesel oil and spare parts, whereupon the company released petitioners from all liability on the open account. The stipulation of facts includes the following sentence: "The asserted net loss carry-over which is here in controversy is totally attributable to the sale and/or alleged abandonment of the equipment since the loss which was attributable to the operation itself has been previously allowed." Paragraphs 9 and 10 of the stipulation of facts read as follows: "9. If the petitioners were called *250 to testify as witnesses in this proceeding they would testify that they offered to turn over to the Northern Commercial Company the caterpillar and other equipment and that Northern Commercial Company refused but that shortly after the offer was made the Northern Commercial Company moved the equipment to property which it owned and that is when petitioners executed the bill of sale and were released from their liability to the Northern Commercial Company. "10. Petitioners if called as witnesses would also testify that the machinery and the equipment left at the mining site in the Manley Hot Springs area was abandoned." I.R.C. 122(d)(5) provides in part as follows: "(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. * * *" Examination of the pleadings, stipulation of facts, and briefs discloses that the only issue for our consideration is whether or not the losses, which were the subject of the claim of net loss *251 carry-over, were attributable to the operation of a trade or business regularly carried on by the taxpayer within the meaning of I.R.C. 122(d)(5), supra. Respondent does not contend that the mining venture for the period of its actual operation (February 17, 1946 to October 1, 1946) was not the operation of a trade or business regularly carried on by taxpayer. The issue revolves around the question of whether the ultimate disposition of the assets, amounting in effect to a liquidation of the business after operations ceased, may be deemed to be attributable to the operation of a trade or business regularly carried on by the taxpayers. The issue before us is well defined in Lazier v. United States, (C.A. 8th) 170 Fed. (2d) 521. The opinion includes the following statement (p. 526): "* * * One reasonably may believe that in providing for the carrying forward and carrying back of 'net operating losses,' Congress was concerned with 'net operating losses' sustained in the normal operation of a business regularly carried on by a taxpayer and was not concerned with losses attributable to the total or partial liquidation of the physical properties *252 used in the conduct of the business. * * *" The authorities have held consistently that where the assets of a business include items used in its operations, but the business does not trade in such items, the sale of part or all of such assets in an isolated transaction is not to be attributed to the operation of a business regularly carried on. This rule has been applied even though the business had not ceased its operations and is not in liquidation. It is our view that the sale of such items in liquidation after operations have ceased is a circumstance tending to emphasize the soundness of the principles applied by the authorities. Decisions applying the fundamental rule to the sale of assets which were used in operations, but in which the respective business did not trade, are: Joseph Sic, 10 T.C. 1096, affd. (C.A. 8th) 177 Fed. (2d) 469, certiorari denied 339 U.S. 913; Hartwig N. Baruch, 11 T.C. 96, affd. (C.A. 2d) 178 Fed. (2d) 402; Charles Weill, 17 T.C. 318. See also I.T. 3711, C.B. 1945, 162. It is urged in petitioners' brief that the disposition of the equipment other than the sale of the wanigan, *253 was by abandonment rather than by sale. We have found as an ultimate fact that the remaining equipment was also sold, and that the consideration for the sale was the release of the liability of petitioners to the vendee. We do not doubt that petitioners had in mind abandonment of the remaining equipment after they had ceased operations because of their lack of success. We think it clear from a review of the entire stipulation of facts that any abandonment intended by petitioners was not final or complete. The subsequent transfer of the equipment by a bill of sale to the Northern Commercial Company and the release by that company of petitioners' obligation on open account convinces us that the final disposition of the remaining equipment was accomplished by arrangement with the Northern Commercial Company and not by virtue of abandonment. While we have found as a fact that the remaining equipment was sold rather than abandoned, our finding and discussion of the fact issue has been largely for the purpose of making it clear to petitioners that we have given careful consideration to the proposition so earnestly argued in the brief that the disposition was by abandonment rather than *254 by sale. It is our view, however, that the finding of sale rather than abandonment is immaterial in the determination of the legal issue involved herein. If we found that the remaining equipment had been abandoned, we would, nevertheless, have reached the conclusion that the losses under consideration were not attributable to the operation of a trade or business regularly carried on by the taxpayer within the meaning of I.R.C. 122(d)(5). The vital question in our judgment is not the manner in which disposition was accomplished, but whether the losses were attributable to operations regularly carried on. In holding that the losses were not so attributable, it is our view that the well established principles applicable to our determination must be applied to the facts in the instant case whether the losses resulted from sale or abandonment. Decision will be entered under Rule 50.