OPINION. Hakron, Judge: The question is whether the loss which was sustained in 1951 qualifies as a net operating loss under section 122,1939 Code, which may be carried back to 1950 and carried forward to 1952. The parties are agreed about the facts; the question involves application of section 122. Petitioners claim net operating loss deductions in 19.50 and 1952 under section 23 (s). The facts may be summarized briefly as follows: Petitioner Irving Eothbart is a certified public accountant. In 1948, one of his clients, Platt, interested him in an oil venture in Stone County, Mississippi, where a well was being drilled by Vasen. During the period December 1948 to January 30, 1950, petitioners entered into transactions with Vasen in which they invested $95,500 in interests in the well and in mineral leases and royalty interests surrounding the well. Platt and Vasen represented to the petitioners that all of these interests were valuable and that secrecy should be maintained to enable all interested parties to expand their interests. Petitioners were thus persuaded to invest their money on faith and they did not make investigations first of the validity of the representations made by Platt and Vasen to them. After they moved in May 1950 to the vicinity of the well-digging operation in Mississippi, they then learned that they were the victims of false representations, if not a “confidence” scheme perpetrated by Vasen. Petitioners, while in Mississippi, in addition to using their time to run down titles to parcels of land, collected evidence of Vasen’s fraud. In August 1950, 3 months later, petitioners returned to Chicago and in October 1950, Irving repurchased and resumed his accounting business. In 1951, through their attorney, petitioners worked out a settlement with Vasen under which petitioners conveyed back to Vasen all royalty interests, mineral leases, and the interest in the oil well, all of which they had purchased from Vasen, and he paid them $36,048. The parties are agreed that the loss which petitioners sustained in 1951 amounted to $57,655.40, and no question about the amount is presented. We are unable to be certain about the amounts, respectively, of the “net operating loss” carryback to 1950, and carryover to 1952, which petitioners now claim. In the petition filed in this Court, it appears that petitioners are claiming a net loss carryback to 1950 in the amount of $9,103.41 (after “absorption” of $20,373.61 in 1951), and a carryover to 1952 of $28,178.38. That is the respondent’s understanding. In petitioners’ brief, other amounts are set forth as the amounts of the claimed carryback and carryover, without explanation. If it became necessary, the doubts about these amounts could be cleared up by the parties later, and no question is raised about them. The seeming discrepancies in the amounts of the carryback and carryover deductions which petitioners claim do not interfere with or impede our consideration of the question to be decided. The basic question is whether the loss of $57,655.40 is attributable to a business regularly carried on by petitioners, or by Irving Roth-bart, individually, within the meaning of section 122 (d) (5). If it was not, then petitioners are not entitled to the net operating loss carryback and the net loss carryover for which they contend. Upon consideration of all of the evidence, we are unable tp find that either Irving Rothbart, individually, or he and his wife together, were engaged in a business in 1950, or 1951, or before 1950, of prospecting and exploring (“wildcatting”) for oil or mineral leases, or of developing an oil well or oil wells, or of financing oil wells or oil properties, of buying and selling oil royalties, mineral leases, or interests therein, or were engaged in any such related business, however it might be described. The facts and the circumstances are conducive to arousing sympathy for the situation in which petitioners found themselves in 1950, after they went to Stone County, Mississippi, and after they had purchased worthless interests in oil royalties and mineral leases, all of which might have been avoided if they had investigated the alluring promotional representations of Platt and Yasen before rather than after they made their investments. We think it is clear that in 1948 and in 1949, petitioners made some casual investments in interests in the well being drilled by Vasen and in mineral leases in adjacent or nearby lands, and made loans to him. In 1950, petitioners exercised an option to convert loans of $15,000 into an additional interest in Vasen’s well and in mineral leases in other lands, and they made four more purchases, for $73,000, of interests in mineral leases. All of the investments were made by purchasing interests from Yasen. Also in 1950, petitioners spent about 3 months in Stone County, Mississippi, observing and at Yasen’s suggestion, it appears, searching land titles (which also appears to have been Yasen’s method of keeping petitioners busy). Neither the purchases of interests in royalties and mineral leases(in 1950, or before, ñor petitioners’ activities in Stone County for 3 months in 1950 constituted, in our opinion, the operation of a business regularly carried on by Irving or by him and his wife. Petitioners rely on Henry E. Sage, 15 T. C. 299, and Otis A. Kittle, 21 T. C. 79, as well as similar cases,[2] all of which have been considered; all are distinguishable on their respective facts.. The Sage and Kittle cases are clearly distinguishable on their respective facts. Upon the facts of this case, it must be concluded that the activities and investments of petitioners in Stone County, Mississippi, constituted investments and activities in various aspects of what amounted to a particular venture (promoted by Vasen) and were isolated transactions. Cf. Burnet v. Clark, 287 U. S. 410. It is true that the petitioners went to Mississippi intending to go into a business of some kind but they were soon disillusioned, and however sympathetic we may be, it all added up to investing in what amounted to one venture, or if not in one venture, then in a few isolated investments. Cf. G. E. Cotton, 25 B. T. A. 866. In Charles Weil, 17 T. C. 318, this Court considered arguments similar to those made by petitioners as well as the applicability of Henry E. Sage, supra, but we were not able to find that the activities of the taxpayer were such that, on the whole, they could be denominated the operation of a' business regularly carried on by the taxpayer. In this case we must come to the same conclusion. Petitioners withdrew from any further activity in their venture in Stone County in August 1950, and in 1951 they entered into a settlement agreement with Vasen. With respect to the settlement agreement, petitioners contend that they did not sell their interests back to Vasen. They argue that they 'simply abandoned them and that the payment they received from Vasen, $36,048, represented “damages in connection! with misrepresentation.” We are unable to agree with this contention. The provisions of the settlement agreement and the performance by petitioners thereunder clearly constituted sales at loss to Vasen of all of the interests in royalties and mineral leases which petitioners had purchased from Vasen. It is held that in 1951, under the settlement agreement, petitioners, or Irving Rothbart, resold and re-conveyed all of the interests to Vasen at a loss, and that the loss in question resulted from the sales of the interests in 1951 to Vasen. Since neither petitioners nor Irving Rothbart regularly carried on a business of buying and selling interests in royalties and mineral leases, and since the sales in 1951 were isolated transactions, the loss in question is not attributable to a business regularly carried on by them, or by Mm, and, therefore, the limitations imposed by section 122 (d) (5) must be applied. Joseph Sic, 10 T. C. 1096, affd. 177 F. 2d 469, certiorari denied 339 U. S. 913; Pettit v. Commissioner, 175 F. 2d 195; Smith v. United States, 180 F. 2d 357; Hartwig N. Baruch, 11 T. C. 96, affirmed per curiam, 178 F. 2d 402; Merrill v. Commissioner, 173 F. 2d 310. No part of the loss sustained in 1951 is subject to carryback tó 1950, or carryover to 1952, under section 122 (d) (5). The determinations of the respondent are sustained. “A deduction to be allowed must always be clearly authorized by law.” Pettit v. Commissioner, supra, p. 196. Decision will be entered for the respondent. Oscar K. Eysenbadt, 10 B. T. A. 716; Foss v. Commissioner, 76 F. 2d 326; Gliptis v. United States, 120 F. Supp. 3 ; Marsch v. Commissioner, 110 F. 2d 423 ; Burnet v. Marston 67 F. 2d 611 ; Mauldin v. Commissioner, 196 F. 2d 714; Walter G. Morley, 8 T. C. 904; James G. Heaslet, 23 B. T. A. 60; William A. Hodgson, 24 B. T. A. 256; Royal W. Irwin, 37 B. T. A. 51; Edward A. Miller, 20 B. T. A. 379; Lawrence J. Montgomery, 17 B. T. A. 1308; Harvey H. Ostenberg, 17 B. T. A. 738; Ignaz Schwinn, 9 B. T. A. 1304; and Henry Turrish, 24 B. T. A. 918.